McClendon, j.
 

 |2This appeal is from a judgment in favor of Capital One, N.A. (Capital One) that dismissed the claims of Kain Groue (plaintiff), who asserts that Capital One should reimburse him for debiting forged checks against his bank account. For the following reasons, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 Plaintiff filed the instant suit against Capital One seeking to recover damages that plaintiff alleged were the result of improper payments of checks by Capital One. According to Groue, Sherrie L. Simms obtained a series of checks from his home and began to forge plaintiffs name on the checks on June 12, 2007. The forged checks were subsequently deposited and debited against his checking account with Capital One. Plaintiff alleged that approximately 105 checks were forged
 
 *1040
 
 and subsequently paid by Capital One, causing him to suffer a loss totaling $11,800.00. Plaintiff further alleged that Simms, who was living with him at the time, intercepted the bank statements in order to prevent him from detecting the fraud. Plaintiff did not learn of the missing funds in his account until he opened his August 2007 bank statement on September 5, 2007.
 

 This action was tried on September 14, 2009. On September 21, 2009, the trial court signed a judgment dismissing plaintiffs claims against Capital One, with prejudice.
 

 Plaintiff has filed the instant appeal, asserting that Capital One failed to exercise ordinary care in paying the checks at issue as required by LSA-R.S. 10:4-406(e). Plaintiff has also requested that this court adopt the reasoning in
 
 Prestridge v. Bank of Jena,
 
 05-545, p. 13 (La.App. 3 Cir. 3/8/06), 924 So.2d 1266, 1275-76,
 
 writ denied,
 
 06-0836 (La.6/2/06), 929 So.2d 1261, and find that Capitol One is liable for payment of most of the forged checks at issue.
 
 [1]
 

 ^DISCUSSION
 

 Usually, a person is not liable on an instrument unless that person or his agent signed the instrument. LSA-R.S. 10:3-401. The general rule is that a bank is liable when it pays based upon a forged signature.
 
 Marx v. Whitney Nat’l Bank,
 
 97-3213, p. 4 (La.7/8/98), 713 So.2d 1142, 1145. A charge against a customer’s account based on a forged instrument is not an authorized charge under the contract between the bank and its customer because the order to pay was not given by the customer.
 
 Id.
 

 Notwithstanding this general rule requiring the bank to bear the risk of loss for a forged instrument, Louisiana law provides that in certain circumstances, a customer may be precluded from asserting a claim against a bank that has paid on a forged instrument.
 
 Id.
 
 A customer is precluded from having funds paid out on a forged instrument restored to his account if his failure to exercise reasonable care in handling the account before or after the forgery, LSA-R.S. 10:3-406 and 10:4-406, respectively, substantially contributed to the loss.
 
 Id.
 
 Capital One asserts that it bears no liability herein because plaintiff failed to exercise reasonable care after the forgeries occurred as required under LSA-R.S. 10:4-406.
 
 [2]
 

 Specifically, LSA-R.S. 10:4-406 provides, in pertinent part:
 
 [3]
 

 [[Image here]]
 

 (c) If a bank sends or makes available a statement of account or items pursuant to Subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not
 
 *1041
 
 authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.
 

 (d) If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by Subsection (c), the customer is precluded from asserting against the bank:
 

 |4(1) the customer’s unauthorized signature or any alteration on the item, if the bank also proves that it suffered a loss by reason of the failure; and
 

 (2) the customer’s unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding thirty days, in which to examine the item or statement of account and notify the bank.
 

 (e) If Subsection (d) applies and the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to loss, the loss is allocated between the customer precluded and the bank asserting the preclusion according to the extent to which the failure of the customer to comply with Subsection (c) and the failure of the bank to exercise ordinary care contributed to the loss. If the customer proves that the bank did not pay the item in good faith, the preclusion under Subsection (d) does not apply.
 

 (f)Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (Subsection (a)) discover and report the customer’s unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration. If there is a preclusion under this Subsection, the payor bank may not recover for breach of warranty under R.S. 10:4-208 with respect to the unauthorized signature or alteration to which the preclusion applies.
 

 Additionally, banks and customers may modify their duties by contract as described in LSA-R.S. 10:4-103.
 
 See Peak v. Tuscaloosa Commerce Bank,
 
 96-1258, p. 8 (La.App. 1 Cir. 12/29/97), 707 So.2d 59, 64. Louisiana Revised Statutes 10:4-103(a) states, in pertinent part:
 

 The effect of the provisions of this Chapter may be varied by agreement, but the parties to the agreement cannot disclaim a bank’s responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure. However, the parties may determine by agreement the standards by which the bank’s responsibility is to be measured if those standards are not manifestly unreasonable.
 

 As such, a bank and its customer may contract for any object which is lawful, possible, determined or determinable, and once the contract has been established, it is the law between the parties.
 
 Peak,
 
 96-1258 at p. 8707, 707 So.2d at 64 (citing LSA-C.C. arts. 1971 and 1983).
 

 IfiAt trial, Capital One introduced its Rules Governing Deposit Accounts, which was in effect at all times material hereto. The agreement provided, in part:
 

 
 *1042
 
 You [the customer] are obligated to examine immediately all statements and items charged against your accounts and to report any disputes or discrepancies to us promptly. In addition to any defenses we may raise under any statute or regulation, you agree that we shall not be liable to you for any altered item, for any item paid on an unauthorized signature, or for any error in any statement unless you notify us in writing of such alteration, unauthorized signature, or error within thirty days after the cancelled item or statement is mailed or otherwise made available to you. In addition, we will not be liable for any subsequent items paid, in good faith, which contain an unauthorized signature or alteration by the same wrongdoer unless you notify us within ten (10) calendar days after the statement and first altered and/or forged items were made available to you.
 

 Plaintiff acknowledged that he signed the Rules Governing Deposit Accounts when he opened his checking account. The thirty-day limitation for reviewing statements and notifying the bank of forgeries found in the parties’ agreement is in accord with the time period provided in LSA-R.S. 10:4 — 406(d)(2).
 
 [4]
 

 Plaintiff failed to comply with the duties owed Capital One pursuant to their agreement and under LSA-R.S. 10:4^406. Plaintiff testified that Simms began to forge plaintiffs name on his checks on June 12, 2007, and that the checks appeared on plaintiffs June 2007 statement, which was mailed in early July 2007.
 
 [5]
 
 Although plaintiff conceded that Capital One sent bank statements on a regular monthly basis, plaintiff admitted that he did not review or reconcile his June or July 2007 statements because they were stolen by Simms.
 
 [6]
 
 It was not until September 6, 2007, that plaintiff, after reviewing his August 2007 statement, notified Capital One of the alleged unauthorized signatures relating to Isthe checks drawn on his account.
 
 [7]
 
 Early detection of Simms’ forgeries could have prevented the subsequent losses, and plaintiffs failure to review the June 2007 statement precludes him from asserting all subsequent forgeries by that same unauthorized signatory.
 
 See Marx v. Whitney Nat’l Bank,
 
 97-3213 at pp. 7-8, 713 So.2d at 1147.
 

 Moreover, the terms of the parties’ contract provides that Capital One would not be liable for any “altered item [or] for any item paid on an unauthorized signature” unless it was notified “of such alteration [or] unauthorized signature ... within thirty days after the cancelled item or statement is mailed or otherwise made available to you.” Accordingly, although LSA-R.S. 10:4-406© allows a notification period of one year, the parties’ agreement requires plaintiff to notify Capital One of the altered items within thirty days after
 
 *1043
 
 the statement that included the first forged instrument was made available; otherwise, Capital One would not be liable for payment of the items.
 

 In
 
 Peak,
 
 this court reviewed the following provision that appeared in a deposit agreement:
 

 We [the bank] will not be liable for any check that is altered or any signature that is forged unless you notify us within thirty (30) calendar days after the statement and the altered or forged items(s) are made available. Also, we will not be liable for any subsequent items paid, in good faith, containing an unauthorized signature or alteration by the same wrongdoer unless you notify us within ten (10) calendar days after the statement and the first altered or forged items were made available....
 

 Peak,
 
 96-1258 at p. 9, 707 So.2d at 64 (Emphasis omitted). In light of the parties’ agreement, this court affirmed a summary judgment rendered in favor of the bank, finding that a bank customer was not entitled to reimbursement from the bank for the forgeries at issue.
 

 Herein, because plaintiff failed to notify Capital One of the initial forgeries in the time frame set forth in the parties’ agreement and because the notification period expressed therein is not manifestly unreasonable, the agreement 17precludes plaintiff from recovering from Capital One any forgeries appearing on his June statement and for any forgeries thereafter by the same wrongdoer.
 

 We recognize that the Third Circuit, in a 3-2 decision, has declined to enforce a contractual provision in a bank’s signature card that reduced the notification period.
 
 [8]
 

 See Prestridge,
 
 05-545 at p. 22-23, 924 So.2d at 1280-81. In declining to enforce the agreement, the court reasoned that “[t]he sixty-day preclusionary period set forth in Bank of Jena’s signature card agreement attempts to shorten the legal prescriptive period, making it more onerous; therefore, it is null as set forth in [LSA-C.C] art. 3471.”
 
 [9]
 

 Prestridge,
 
 05-545 at p. 22-23, 924 So.2d at 1280. However, the one-year bar provided in LSA-R.S. 10:4-406 does not act as a prescriptive period, but is instead a substantive element of a claim for payment of a forged check.
 
 See, e.g. Wetherhill v. Putnam Invest,
 
 122 F.3d 554, 557 (8th Cir.1997).
 
 *1044
 
 Accordingly, while we are concerned that the enforcement of the contractual provision at issue may shift potentially significant fraud losses onto the customer, we are constrained to find that it is not viola-tive of LSA-C.C. art. 3471. Moreover, in most instances, the customer is in the best position to identify the fraudulent transactions.
 

 1 ^Additionally, the provisions of Title 10, Commercial Laws, “shall be liberally construed and applied to promote its underlying purposes and policies.” LSA-R.S. 10:1 — 103(a). The purposes and policies of Title 10 are:
 

 (1) to simplify, clarify, and modernize the law governing commercial transactions;
 

 (2) to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties; and
 

 (3) to promote uniformity of the law among the various jurisdictions.
 

 LSA-R.S. 10:l-103(a). In accordance with this directive, we note that our ruling, as well as our prior ruling in
 
 Peak,
 
 is in conformity with other jurisdictions, which have enforced contracts that have reduced the applicable notification periods. For instance, in
 
 Bank of America, N.A. v. Putnal Seed and Grain Inc.,
 
 965 So.2d 300, 301 (Fla.Ct.App.2007), the court upheld an agreement that reduced a notification time period from one year to sixty days, finding that the reduction did not “absolve the bank of its duty to exercise ordinary care,” and stating that the “60-day notice requirement only creates a condition precedent which Putnal must comply with before it may seek reimbursement.”
 
 See also Graves v. Wachovia Bank, N.A.,
 
 607 F.Supp.2d 1277 (M.D.Ala.2009),
 
 Mercantile Bank of Arkansas v. Vowell,
 
 82 Ark.App. 421, 117 S.W.3d 603 (6/11/03),
 
 Community Bank & Trust, S.S.B. v. Fleck,
 
 107 S.W.3d 541 (Tex.12/5/02),
 
 Nat’l Title Ins. Corp. Agency v. First Union Nat’l Bank,
 
 263 Va. 355, 559 S.E.2d 668, 672 (3/1/02).
 

 ALLOCATION OF FAULT
 

 Although plaintiff failed to comply with the duties imposed on the customer in the parties’ agreement and by LSA-R.S. 10:4-406(c), if the customer proves that the bank failed to exercise ordinary care in paying the items and that the failure substantially contributed to the loss, the loss is allocated between the customer and the bank.
 
 See
 
 LSA-R.S. 10:4-406(e);
 
 see also
 
 LSA-R.S. 10:3-406. Moreover, although the parties can modify provisions of the Commercial Laws by ^contract, a bank cannot disclaim responsibility arising from its failure to exercise ordinary care. LSA-R.S. 10:4-103(a). :
 

 “Ordinary Care” is defined in LSA-R.S 10:3 — 103(a)(7) as follows:
 

 “Ordinary care” in the case of a person engaged in business means observance of reasonable commercial standards, prevailing in the area in which the person is. located, with respect to the business in which the person is engaged. In the case of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank’s prescribed procedures and the bank’s procedures do not vary unreasonably from general banking usage not disapproved by this Chapter or Chapter 4.
 

 The statute does not impose a duty upon a paying bank to inspect every check to verify signatures appearing thereon prior to processing the check for payment. The mere fact that a bank may have paid an item over a forged signature does not establish that a bank failed to exercise “ordinary care.”
 

 
 *1045
 
 Plaintiff argues that Capital One failed to exercise “ordinary care” insofar as it processed checks for payments despite a “hold” being placed on his account on July 25, 2007. However, the July 25, 2007 hold was not requested by plaintiff and is unrelated to the forged checks at issue in this matter. Testimony at trial revealed that the hold was placed by Capital One after plaintiff left his checkbook at a local restaurant. Because no one from the restaurant was able to contact plaintiff, a restaurant employee called Capital One to inform the bank that plaintiffs checkbook was at the restaurant. The hold was removed on July 26, 2007, once plaintiff came to the bank and was informed as to the location of his check book. Additionally, the checkbook left at the restaurant did not contain any checks that plaintiff alleges were forged. Rather, the forged checks came from an entirely different sequence of checks allegedly stolen from plaintiffs home. As such, the fact that Capita! One placed a hold on plaintiffs account so that it could inform him of the misplaced checkbook does not reflect that Capital One failed to exercise ordinary care under the circumstances. Moreover, plaintiff failed to introduce any evidence to show that Capital One, when paying the instruments at issue, failed to adhere to a | ^reasonable commercial standard prevailing in the area. Accordingly, the trial court was not clearly wrong in finding that no fault should be apportioned to Capital One in paying the items at issue.
 

 For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are to be split equally between the parties.
 

 AFFIRMED.
 

 [1]
 

 .We note that plaintiffs two-page brief does not comply with Uniform Rules-Courts of Appeal, Rule 2-12.4, insofar as it fails to include a statement of jurisdiction and fails to assign and specify assignments of error. However, the appellate courts of this state have considered briefs in improper form when filed by a
 
 pro se
 
 party.
 
 See Carsice v. Empire Janitorial,
 
 08-0741, p. 3 (La.App. 4 Cir. 12/17/08), 2 So.3d 553, 554-55,
 
 writ denied,
 
 09-0097 (La.3/13/09), 5 So.3d 123 and LSA-C.C.P. arts. 2129 and 2164. Accordingly, since plaintiff is representing himself, we will consider the merits of his appeal, despite the lack of proper form of his appellate brief.
 

 [2]
 

 . Capital One does not assert that LSA-R.S. 10:3-406 applies herein.
 

 [3]
 

 . This matter falls within the ambit of Louisiana’s version of the Uniform Commercial Code (UCC). Thus, it appears that any potential claims allegedly arising in negligence grounded under general Louisiana law would be displaced by the UCC.
 

 [4]
 

 . We note that the ten-day limitation contained in the Rules Governing Deposit Accounts is not at issue.
 

 [5]
 

 . Capital One asserts that the alleged forgeries began in April 2007, but whether the forgeries began in April or June is immaterial under the circumstances herein.
 

 [6]
 

 . Although plaintiff testified that on July 2, 2007, he notified Amber Davis, a Capital One employee, that some of his checks were missing, Mrs. Davis did not recall the specific conversation. Mrs. Davis indicated that had she been informed that checks were missing, she would have referred plaintiff to a banker to address the issue. Regrettably, because plaintiff apparently believed that the missing checks "were in the trash," he did not place a hold on his account or request a statement to verify that the checks were not being utilized by a third party.
 

 [7]
 

 .On September 11, 2007, plaintiff submitted a Uniform Affidavit of Forgery to Capital One.
 

 [8]
 

 . The agreement between the bank and customer provided:
 

 You must examine your statement of account with "reasonable promptness.” If you discover (or reasonably should have discovered) any unauthorized payments or alterations, you must promptly notify us of the relevant facts. If you fail to do either of these duties, you will have to either share the loss with us, or bear the loss entirely yourself (depending on whether we exercised ordinary care and, if not, whether we substantially contributed to the loss). The loss could be not only with respect to items on the statement but other items forged or altered by the same wrongdoer. You agree that the time you have to examine your statement and report to us will depend on the circumstances, but that such time will not, in any circumstance, exceed a total of 30 days from when the statement is first made available to you.
 

 You further agree that if you fail to report any unauthorized signatures, alterations, forgeries or any other errors in your account within 60 days of when we make the statement available, you cannot assert a claim against us on any items in that statement, and the loss will be entirely yours. This 60 day limitation is without regard to whether we exercised ordinary care.
 

 Prestridge,
 
 05-545 at p, 9, 924 So.2d at 1273 (Emphasis omitted).
 

 [9]
 

 . Louisiana Civil Code art. 3471 provides:
 

 A juridical act purporting to exclude prescription, to specify a longer period than that established by law, or to make the requirements of prescription more onerous, is null.